**SINGH, SINGH & TRAUBEN, LLP**
**MICHAEL A. TRAUBEN** (SBN: 277557)
  mtrauben@singhtraubenlaw.com
**THOMAS K. RICHARDS** (SBN: 310209)
  trichards@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

*Attorneys for Plaintiff*
FOUNDATION MEDIA PARTNERS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUNDATION MEDIA PARTNERS, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> BUILD-A-BEAR WORKSHOP, INC., a Delaware corporation, and DOES 1-10, inclusive, <br><br> Defendants. | ) Case No.: **2:25-cv-10382** <br> ) <br> ) **COMPLAINT FOR:** <br> ) <br> )　1.　**BREACH OF CONTRACT;** <br> )　2.　**BREACH OF THE IMPLIED** <br> )　　　**COVENANT OF GOOD FAITH AND** <br> )　　　**FAIR DEALING;** <br> )　3.　**DECLARATORY RELIEF;** *and* <br> )　4.　**ACCOUNTING** <br> ) <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) |

SINGH,
SINGH &
TRAUBEN,
LLP

1

Plaintiff, Foundation Media Partners, LLC ("**FMP**" or "**Plaintiff**"), by and through its undersigned counsel, hereby files its Complaint against Build-A-Bear Workshop, Inc. ("**Build-A-Bear**" or "**Defendant**") and DOES 1 through 10, inclusive, and in support thereof alleges as follows:

## THE PARTIES

1.      Plaintiff FMP is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County, California. FMP provides representation, advisory, and consulting services in the entertainment industry.

2.      Upon information and belief, Defendant Build-A-Bear is a Delaware corporation with its principal place of business at 1954 Innerbelt Business Center Drive, St. Louis, Missouri 63114. Build-A-Bear is a retailer specializing in customizable stuffed animals and related products.

3.      The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are presently unknown to Plaintiff, who therefore sues these Defendants by fictitious names. Plaintiff will seek leave of Court to amend this pleading to allege their true names and capacities as soon as they are ascertained. Plaintiff further alleges, upon information and belief, that each of these fictitiously named Defendants is responsible in some manner for the acts alleged herein.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff FMP is a California limited liability company with its principal place of business in Los Angeles County, California. Defendant Build-A-Bear is a Delaware corporation with its principal place of business in St. Louis, Missouri.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a

SINGH, SINGH & TRAUBEN, LLP

substantial part of the events or omissions giving rise to the claims occurred in this District, including Plaintiff's performance under the Agreement from its offices in Los Angeles County, California, and because Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

6. On or about April 12, 2017, FMP and Build-A-Bear entered into a written agreement (the "**Agreement**") pursuant to which FMP agreed to represent and advise Build-A-Bear with respect to, among other things, expanding Build-A-Bear's "Honey Girls," "Promise Pets," and "Merry Mission" brands in the film, television, new media, music, and literary industries. A true and correct copy of the Agreement is attached hereto as **Exhibit "A"**.

7. Over the course of the parties' relationship, FMP and Build-A-Bear entered into several amendments to the Agreement, which extended the Agreement's term, adjusted the "Representation Fee" and commission structure, and modified certain other provisions while maintaining the core provisions regarding FMP's representation and advisory services (the "**Amendments**"). True and correct copies of the Amendments are attached hereto as Composite Exhibit "B".

8. The first Amendment, dated April 12, 2018, changed FMP's representation from exclusive to non-exclusive and substantially expanded the definition of "Brands" to include all Build-A-Bear's brands (the "**Brands**"), not limited to the original three identified in the April 12, 2017 Agreement (the "**First Amendment**").

9. Subsequent amendments, including the second Amendment dated October 12, 2018 (the "**Second Amendment**"), and the fifth Amendment dated April 1, 2020 (the "**Fifth Amendment**"), extended the term and adjusted the monthly Representation Fee, such as increasing the "Representation Fee" to $22,500.00 for a period and later temporarily reducing it to $16,750.00 due to the COVID-19 pandemic with deferred payments.

10. The sixth Amendment, effective January 2021, further extended the term of the Agreement to January 31, 2022, refined the non-compete clause to specify direct

SINGH,
SINGH &
TRAUBEN,
LLP

competitors, set the "Representation Fee" at $33,500.00, adjusted commission recoupment to $930,000.00 on the first $9,900,000.00 in net revenues, and required good faith negotiations for extensions or alternative relationships, including with Build-A-Bear Entertainment, LLC (the "**Sixth Amendment**").

11.    The seventh Amendment, effective January 2022, revised the commission schedule to 5% on net revenues up to $10,000,000.00 and 2.5% thereafter (after recoupment), with a $2,000,000.00 annual cap, extended post-term commissions to 24 months generally and 48 months for feature films, and extended the term to January 31, 2023 (the "**Seventh Amendment**").

12.    Finally, the eighth Amendment, effective January 31, 2023, extended the term set forth in Section 13 of the Agreement to July 31, 2024, while retaining provisions for good faith negotiations on future extensions or relationships (the "**Eighth Amendment**").

13.    Under the Agreement, FMP's duties included, among other things: (a) using commercially reasonable efforts to introduce Build-A-Bear and its materials to various areas of entertainment to expand the Brands; (b) assisting with packaging of internal products to expand creative elements of the Brands; (c) introducing value-conscious celebrities to add commercial value; (d) finding and establishing publishing deals; (e) introducing overhead/development deals with television studios or networks; (f) involving Build-A-Bear's legal counsel in negotiations and not closing deals without consent; (g) providing development services in app and technical spaces at cost; (h) offering first right of refusal on FMP's "Superhero Factory" project; (i) consulting on all areas of entertainment, including guiding sales processes, creating sales strategies and business models, and suggesting writers, directors, and show creators; (j) securing music publishing/label relationships; (k) communicating regularly with Build-A-Bear; (l) not representing direct competitors; (m) providing services of senior executive staff led by Patrick Hughes; and (n) submitting final pitch materials for approval.

14.    In exchange, Build-A-Bear agreed to, among other things: (a) provide FMP with necessary materials; (b) make employees and executives available; (c) respond to

offers in a reasonable time; (d) cover pre-approved travel expenses for FMP team members outside California; (e) provide its own legal services; (f) cover its own expenses; (g) pay FMP a recoupable monthly "Representation Fee," as amended (*e.g.*, $33,500 per month pursuant to the Sixth Amendment); and (h) pay commissions on net revenues actually received by Build-A-Bear for deals closed during the term, specifically in accordance with certain specified commission schedules.

15. FMP fully performed its obligations under the Agreement, including by using commercially reasonable efforts to expand the Brands and consulting on entertainment-related opportunities. For example, FMP's principal, Patrick Hughes ("**Hughes**"), initiated discussions with Gary Tobey ("**Tobey**") of Haworth Media + Marketing regarding a potential partnership between Build-A-Bear and Walmart, including integration of Build-A-Bear's retail experience into Walmart locations.

16. Tobey responded positively, indicating he had a productive conversation with Walmart, that Walmart loved the idea, and that Walmart would want to test the concept prior to a full rollout.

17. Thereafter, Build-A-Bear announced and implemented a partnership with Walmart, including opening test stores inside select Walmart locations across the United States, with several expansions planned. This partnership has generated and continues to generate substantial net revenues for Defendant Build-A-Bear in connection with the Brands, all of which are subject to commissions.

18. In addition, Build-A-Bear entered into a licensing partnership with Warner Bros. Consumer Products to launch a Harry Potter-themed collection, including customizable bears, clothing, and accessories inspired by the Wizarding World literary and film properties. This deal has also generated and continues to generate substantial net revenues for Defendant Build-A-Bear, all of which are subject to commissions.

19. Similarly, in October 2024, Build-A-Bear announced a collaboration with Varsity Spirit (a division of Varsity Brands) for a line of cheerleading and spirit-themed plush toys, uniforms, and accessories, including pop-up shops at Varsity events. This

partnership, which incorporated new media and promotional elements, further generated significant revenues for Defendant.

20. Notwithstanding FMP's procurement and advisory efforts in accordance with the Agreement and Amendments, Build-A-Bear has failed and refused to pay FMP any commissions owed under the Agreement for revenues derived from deals closed during the term, including, but not limited to, the collaborations with Walmart, Warner Bros. Consumer Products, and Varsity Spirit.

21. As a direct and proximate result of Build-A-Bear's breaches, FMP has suffered damages in an amount to be proven at trial, but in no event less than $10,000,000.00, including unpaid commissions, lost opportunities, and other damages.

22. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## COUNT I
## BREACH OF CONTRACT
### (By Plaintiff as Against Defendant)

23. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 22 as if fully set forth herein.

24. The Agreement is a valid and enforceable contract between FMP and Build-A-Bear.

25. FMP performed all conditions, covenants, and promises required on its part under the Agreement.

26. Build-A-Bear materially breached the Agreement by failing and refusing to pay FMP the tiered commissions on net revenues, as amended, Defendant Build-A-Bear received from deals closed during the term.

27. As a direct and proximate result of Build-A-Bear's material breaches of the Agreement, FMP has been damaged in an amount to be determined at trial.

///

///

SINGH,
SINGH &
TRAUBEN,
LLP

COMPLAINT

## COUNT II
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (*By Plaintiff as Against Defendant*)

28. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 22 as if fully set forth herein.

29. The Agreement contains an implied covenant of good faith and fair dealing, which requires each party to act in a manner that does not frustrate the purpose of the Agreement or deprive the other party of the benefits of the bargain.

30. FMP performed all conditions, covenants, and promises required on its part under the Agreement, including by using commercially reasonable efforts to introduce and expand opportunities for the Brands.

31. Build-A-Bear breached the implied covenant of good faith and fair dealing by, among other things, unfairly interfering with FMP's right to receive the benefits of the Agreement, including by removing FMP from negotiations for opportunities that FMP introduced and expanded (such as the Walmart partnership, which FMP introduced with explicit ties to entertainment elements such as a proposed Lifetime holiday movie), proceeding with such deals without FMP's involvement in violation of the representation and consulting provisions, failing to communicate or respond reasonably to FMP's efforts, and refusing to pay commissions or provide information necessary to calculate amounts owed under the commission schedule for revenues derived from deals closed during the term or tail periods, including those connected to the Brands.

32. Build-A-Bear's exclusion of, and non-payment to, FMP frustrates FMP's reasonable expectation of commissions under Section 2 of the Agreement, as amended, and FMP's involvement in deals it introduced and expanded.

33. Build-A-Bear's actions were undertaken in bad faith, including as demonstrated by the timing of the Walmart partnership, namely, soon after FMP's introduction of the Walmart opportunity and receipt of positive feedback, Build-A-Bear excluded FMP and announced pilot pop-up shops in Walmart, later expanding to additional

SINGH, SINGH & TRAUBEN, LLP

COMPLAINT

locations, without compensating or involving FMP further, and continuing this pattern through promises of partnership evolution that were not honored, leading to Defendant's anticipatory breach of the Agreement in September 2025.

34.    As a direct and proximate result of Build-A-Bear's breach of the implied covenant, FMP has been damaged in an amount to be determined at trial, including lost commissions, lost opportunities, and other consequential damages.

## COUNT III
## DECLARATORY RELIEF
### (By Plaintiff as Against Defendant)

35.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

36.    An actual controversy exists between the parties regarding their rights and obligations under the Agreement and its Amendments, particularly with respect to FMP's entitlement to tail period commissions on net revenues received post-term from deals closed during the term.

37.    FMP seeks a declaration from the Court that FMP is entitled to ongoing tail period commissions for 24 months generally and 48 months for films, as provided in the Agreement, on all qualifying net revenues actually received by Build-A-Bear.

## COUNT IV
## ACCOUNTING
### (By Plaintiff as Against Defendant)

38.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 37 as if fully set forth herein.

39.    Under the Agreement, Build-A-Bear owes FMP commissions based on a percentage of net revenues actually received by Build-A-Bear from deals closed during the term (or applicable tail periods). The calculation of such commissions requires detailed examination of Build-A-Bear's books, records, and financial statements, which are exclusively in Build-A-Bear's possession and control.

SINGH, SINGH & TRAUBEN, LLP

8

40.    The amount due to FMP under the Agreement cannot be ascertained without an accounting, as the net revenues from relevant deals (including those potentially tied to the Brands, such as entertainment-integrated retail partnerships like Walmart or projects like Honey Girls) are complex, involve multiple revenue streams, and are unknown to FMP. Build-A-Bear has refused to provide such information or pay any commissions despite FMP's efforts.

41.    FMP has requested access to Build-A-Bear's financial records to verify revenues and commissions, but Build-A-Bear has refused, leaving FMP without an adequate remedy at law. FMP is entitled to an equitable accounting to determine the amounts owed.

42.    As a result, FMP requests that the Court order Build-A-Bear to provide a full and complete accounting of all net revenues received in connection with the Agreement during the term and tail periods, and to pay FMP all amounts due thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FMP prays for judgment against Defendant Build-A-Bear as follows:

1.    For compensatory damages in an amount to be proven at trial;

2.    For an order requiring Defendant to provide a full and complete accounting of all net revenues received in connection with the Agreement during the term and applicable tail periods of the Agreement;

3.    For an order requiring Defendant to pay Plaintiff all commissions and other amounts due as determined by the accounting;

4.    For a declaration that Plaintiff is entitled to tail period commissions for 24 months generally and 48 months for feature films on qualifying net revenues received post-term;

5.    For prejudgment interest at the legal rate;

6.    For costs of suit incurred herein;

7.    For attorneys' fees if recoverable under the Agreement or applicable law; and

SINGH,
SINGH &
TRAUBEN,
LLP

9

COMPLAINT

8. For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues in this action so triable.

DATED: October 28, 2025        Respectfully Submitted,

SINGH, SINGH & TRAUBEN, LLP
MICHAEL A. TRAUBEN

By:  /s/ Michael A. Trauben
        Michael A. Trauben

*Attorneys for Plaintiff*
FOUNDATION MEDIA PARTNERS, LLC

SINGH, SINGH & TRAUBEN, LLP

10

COMPLAINT