UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | | Date | June 24, 2026 |
|---|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:
Not Present                                Not Present

**Proceedings:**     (IN CHAMBERS) - COUNTERCLAIM-DEFENDANTS'
MOTION TO DISMISS COUNTERCLAIMS IN PART
PURSUANT TO FED. R. CIV. P. 12(B)(6) (Dkt. 45, filed on May
29, 2026)

## I.    INTRODUCTION

The Court finds that the instant motion is appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

On October 28, 2025, plaintiff Foundation Media Partners, LLC ("FMP") filed this action against Build-A-Bear Workshop, Inc. ("Build-A-Bear" or "Defendant") and DOES 1 through 10, inclusive.  Plaintiff asserts four claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory relief; and (4) an accounting.  Dkt. 1 ("Compl.").

On November 6, 2025, United States District Judge Percy Anderson dismissed plaintiff's complaint for lack of subject matter jurisdiction, with leave to amend, finding that "the Complaint does not allege sufficient facts to support the Court's exercise of diversity jurisdiction over this action."  Dkt. 8 at 2.

On February 18, 2026, Judge Anderson recused himself from presiding over this action, which was randomly assigned to United States District Judge Christina A. Snyder. Dkt. 24.

On November 10, 2025, plaintiff filed its operative first amended complaint.  Dkt. 11 ("FAC").  The first amended complaint asserts the same four claims for relief as those asserted in the original complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

On January 14, 2026, defendant filed a motion to dismiss plaintiff's complaint. Dkt. 19 ("Mot."). On March 10, 2026, the Court denied defendant's motion to dismiss. Dkt. 29.

On April 9, 2026, defendant filed an answer to plaintiff's FAC. Dkt. 30. On April 30, 2026, defendant filed an amended answer to plaintiff's FAC, along with counterclaims against FMP and counterclaim-defendant Patrick Hughes ("Hughes," and collectively, with FMP, the "counterclaim defendants"). Dkt. 32 (Counter-compl.). Defendant asserts nine counterclaims against FMP and Hughes: (1) breach of contract; (2) breach of fiduciary duty; (3) false advertising, 15 U.S.C. § 1125(a); (4) trademark infringement, 15 U.S.C. § 1114; (5) unfair competition and false designation of origin, 15 U.S.C. § 1125(a); (6) federal trademark dilution, 15 U.S.C. § 1125(a)(1)(C); (7) unfair and deceptive trade practices, pursuant to Cal. Bus. & Prof. Code § 17200 and other statutes; (8) common law trademark infringement and unfair competition; and (9) trademark dilution and injury to business reputation, pursuant to Cal. Bus. & Prof. Code § 14247 and other statutes. Id.

On May 29, 2026, FMP and Hughes filed the instant motion to dismiss defendant's counterclaims. Dkt. 45 ("Mot."). On June 8, 2026, Build-A-Bear filed an opposition. Dkt. 46 ("Opp."). On June 15, 2026, FMP and Hughes filed a reply. Dkt. 47 ("Reply").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

The allegations in FMP's first amended complaint are described in the Court's March 10, 2026 order. Dkt. 29.

Build-A-Bear alleges the following in its countercomplaint against FMP and Hughes.

### A.    The Parties

Counterclaim-defendant Foundation Media Partners, LLC is a California limited liability company with its principal place of business in Los Angeles County, California. Counter-compl. ¶ 2. FMP provides representation, advisory, and consulting services in the entertainment industry. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|----------|------------------------|------|---------------|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

Counterclaim-defendant Patrick Hughes is the sole member and owner of FMP and is a citizen and resident of California domiciled in Los Angeles County, California. Id. ¶ 3.

FMP is a corporate shell for Patrick Hughes' personal affairs and is an alter ego of Patrick Hughes. Id. ¶ 4.

Build-A-Bear is a Delaware corporation with its principal place of business located in St. Louis, Missouri. Id. ¶ 1. Build-A-Bear has emerged as one of the world's leaders in high-quality plush toys, innovative store experiences, and engaging, family-friendly entertainment. Id. ¶ 9.

Among other things, guests at Build-A-Bear can create their own plush toys by participating in the stuffing, dressing, accessorizing, and naming of their own teddy bears and other plush toys based on Build-A-Bear's own intellectual property and in conjunction with a variety of best-in-class licenses. Id. ¶ 10. Build-A-Bear currently has more than 650 interactive company-owned, partner-operated and franchise experience locations across the country and around the world, where a variety of formats provide guests of all ages a hands-on entertaining experience and foster a lasting and emotional brand connection. Id. ¶ 11. The hands-on and interactive nature of Build-A-Bear's locations combined with Build-A-Bear's pop-culture appeal has enabled Build-A-Bear to expand beyond its retail stores to include e-commerce sales on www.buildabear.com and non-plush branded consumer categories via out-bound licensing agreements with leading manufacturers, as well as the creation of engaging content via Build-A-Bear Entertainment. Id. ¶ 12.

### B.     Build-A-Bear and FMP's Agreement

On April 12, 2017, Build-A-Bear and FMP entered into an agreement (the "Agreement") for the express, limited purpose of FMP representing and advising Build-A-Bear and assisting with respect to various aspects of expanding Build-A-Bear's brands in certain entertainment industries, specifically the film, television, new media, music, and literary industries (the "Covered Industries"). Id. ¶ 13.

Over time, the Agreement was amended (the Agreement, together with the Amendments thereto, collectively the "Agreement"). Id. ¶ 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|----------|------------------------|------|---------------|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

The Agreement expressly limits FMP's duties to representing Build-A-Bear within the Covered Industries, and expressly excluded representation of Build-A-Bear by FMP in any other industries. Id. ¶ 15.

Under the Agreement, FMP was paid a significant monthly representation fee. Id. ¶ 16. As of the final Amendment to the Agreement, Build-A-Bear paid FMP a monthly representation fee of $35,510. Id. The Agreement expired as of July 31, 2025. Id.

Over the duration of the Agreement, Build-A-Bear paid FMP millions of dollars in monthly representation fees. Id. ¶ 17.

In addition to monthly representation fees, FMP was eligible to receive certain commissions under the Agreement. Id. ¶ 18. However, consistent with the scope of its duties, the only types of deals for which FMP was hired to represent Build-A-Bear and which could potentially entitle FMP to commissions under the Agreement were deals closed in the Covered Industries, defined as "Compensatable Transactions." Id. Deals relating to the sales of plush toys or accessories by Build-A-Bear are within its core, traditional business, are not in the Covered Industries, and are not within the scope of the Agreement. Id.

To date, FMP has not earned and is not owed any commissions under the Agreement. Id. ¶ 19.

### C.    Duties Allegedly Undertaken and Breached by FMP

Under the Agreement, FMP undertook a variety of duties. Id. ¶ 20. In the Agreement, FMP also expressly promised and agreed to always put the needs of Build-A-Bear over FMP's own needs. Id. ¶ 21.

FMP breached numerous duties it owed to Build-A-Bear under the Agreement, including the following:

FMP did not involve Build-A-Bear's legal counsel in all negotiations with outside parties. Id. ¶ 23. In fact, FMP repeatedly and unilaterally engaged in negotiations with outside parties, without involving Build-A-Bear's legal counsel. Id.

FMP closed deals without first obtaining Build-A-Bear's consent. Id. ¶ 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

FMP did not communicate regularly with Build-A-Bear to keep up with Build-A-Bear initiatives, needs, and requirements. Id. ¶ 25.

FMP did not provide an annual written plan to Build-A-Bear, much less one containing an update on all known or anticipated entertainment projects in which FMP was representing or advising Build-A-Bear, including an identification of what had been accomplished to date and what remained to be completed over the upcoming twelve months. Id. ¶ 26.

FMP did not provide monthly written updates of any kind to the annual written plan, much less ones regarding new projects not previously identified within a twelve-month rolling projection. Id. ¶ 27.

FMP did not engage a full-time business affairs and project manager dedicated exclusively to Build-A-Bear's account. Id. ¶ 28.

Worst of all, FMP breached its promise and obligation to always put the needs of Build-A-Bear over FMP's own needs. Id. ¶ 29. To the contrary, FMP acted in its own self-interest, placing its needs over Build-A-Bear's and at times acted to the detriment of Build-A-Bear. Id.

**D.     Build-A-Bear's Trademarks and Intellectual Property**

Build-A-Bear has a strong and beloved reputation and presence in the United States and around the world, selling plush toys, clothing, accessories, and gifts, as well as providing related entertainment goods and services under its readily recognizable Build-A-Bear brand and associated logos. Id. ¶ 30.

Since its founding in 1997, Build-A-Bear has consistently and prominently used its Build-A-Bear name and associated logos, as well as other related marks and logos, in connections with its goods and services (collectively, the "BUILD-A-BEAR Marks"). Id. ¶ 31.

While Build-A-Bear's continued use of the BUILD-A-BEAR Marks provides it with strong common law rights to those marks across the United States, Build-A-Bear also owns a number of valid, subsisting, uncancelled, and unrevoked registrations in the United States Patent and Trademark Office ("USPTO") for the BUILD-A-BEAR Marks. Id. ¶ 32 (listing registered BUILD-A-BEAR Marks).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

Build-A-Bear also has pending trademark applications that utilize the Build-A-Bear name.  Id. ¶ 34 (listing Build-A-Bear's pending trademark applications).

Based on its federal trademark registrations and common law rights, Build-A-Bear owns the exclusive right to use the BUILD-A-BEAR Marks in commerce in connection with the goods and services covered by the registrations. Build-A-Bear's reputation for quality, including as reflected in the BUILD-A-BEAR Marks, was achieved through years of effort and is an extremely valuable asset.  Id. ¶ 36.

Build-A-Bear has spent considerable time and expense on the creation, development, and enforcement of the BUILD-A-BEAR Marks.  Id. ¶ 37.  Through Build-A-Bear's widespread reputation for quality and excellence, the BUILD-A-BEAR Marks have become strong and well-known in connection with plush toys, clothing, accessories, gifts, and related entertainment goods and services.  Id.  As a result of Build-A-Bear's nearly 30 years use of the BUILD-A-BEAR Marks in connection with its high quality products and services and the extensive publicity associated with its goods and services, the BUILD-A-BEAR Marks have come to be exclusively associated with high quality plush toys, clothing, accessories, gifts, and related entertainment goods and services originating solely from Build-A-Bear.  Id.

Build-A-Bear's extensive use and promotion of the BUILD-A-BEAR Marks has caused them each to become famous in the marketplace and synonymous with Build-A-Bear as defined in 15 U.S.C. § 1125(c), and Build-A-Bear has received abundant unsolicited news coverage.  Id. ¶ 38.

Build-A-Bear also has common law and federal trademark rights and other intellectual property rights specifically associated with its entertainment properties, including for "HONEY GIRLS," "GLISTEN AND THE MERRY MISSION," "KABU," and "UNSTUFFED – A BUILD-A-BEAR STORY," including registrations and applications reflecting those exclusive trademark rights (collectively, "the BUILD-A-BEAR Entertainment Marks").  Id. ¶ 39 (listing the BUILD-A-BEAR Entertainment Marks).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

### E.    Counterclaim-Defendants' Alleged False Statements Regarding and Unauthorized Uses of Build-A-Bear Trademarks

On the website at https://foundationmediapartners.com/brand-success, counterclaim-defendants assert that they have "worked with Build-A-Bear Workshop to transform the beloved retailer into a full 360 entertainment engine – helping build the company into what it is today." Id. ¶ 41.  Counterclaim-Defendants further assert that they "drove strong strategic decisions and executed on multiple highimpact initiatives, including the brand's landmark expansion into Walmart, a massive licensing deal for Harry Potter, a partnership with Varsity Spirit, and hit ventures across movies, TV series, and books – including a publishing partnership with Macmillan for board books." Id.

Counterclaim-Defendants' statements about their contributions to Build-A-Bear are demonstrably false and misleading, including as to consumers, competitors, and the public, wherein, among other things, counterclaim-defendants did not significantly contribute to, let alone drive and execute on, Build-A-Bear's expansion into Walmart, Build-A-Bear's licensing deal for Harry Potter, or Build-A-Bear's partnership with Varsity Spirit, nor did Counterclaim-Defendants drive and execute "hit ventures across movies, TV series, and books" for Build-A-Bear. Id. ¶ 42.

Counterclaim-defendants' website further includes a fake shop-in-shop photograph that utilizes the Build-A-Bear trademarked name and purports to depict a Build-A-Bear retail location within a Walmart store, even though actual Build-A-Bear retail locations within Walmart stores look nothing like this and never have. Id. ¶ 43.

Counterclaim-defendants have also included multiple images on their website that include Build-A-Bear's trademarks and intellectual property without permission or authorization from Build-A-Bear, including posters for the "HONEY GIRLS", "GLISTEN AND THE MERRY MISSION", "KABU", and "UNSTUFFED – A BUILD-A-BEAR STORY" entertainment properties. Id. ¶ 44.

Counterclaim-defendants' statements have been made in interstate commerce and in advertising their own services. Id. ¶ 45.

By participating in and promoting the production of films, television shows, music, and other entertainment industry ventures, counterclaim-defendants operate in a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | | Date | June 24, 2026 |
|---|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | | |

manner competitive to Build-A-Bear and its promotion and production of its own projects in the entertainment industry. Id. ¶ 46.

Counterclaim-defendants' use of the BUILD-A-BEAR Marks, BUILD-A-BEAR Entertainment Marks, and other Build-A-Bear intellectual property is without authorization or consent of Build-A-Bear. Id. ¶ 47.

Counterclaim-defendants are using the BUILD-A-BEAR Marks, BUILD-A-BEAR Entertainment Marks, and other Build-A-Bear intellectual property in blatant disregard of Build-A-Bear's rights. Id. ¶ 48.

Counterclaim-defendants are using misleading language in an effort to create the false impressions that counterclaim-defendants are responsible for and secured the rights for, among other things, Build-A-Bear's expansion into Walmart, Build-A-Bear's licensing deal for Harry Potter, or Build-A-Bear's partnership with Varsity Spirit. Id. ¶ 49.

Counterclaim-defendants are making these false statements and misusing the BUILD-A-BEAR Marks, BUILD-A-BEAR Entertainment Marks, and other Build-A-Bear intellectual property in order to take improper advantage of and benefit from Build-A-Bear's famous brand and goodwill associated with the BUILD-A-BEAR Marks, BUILD-A-BEAR Entertainment Marks, and other Build-A-Bear intellectual property. Id. ¶ 50.

Although counterclaim-defendant FMP and Build-A-Bear previously had a contractual agreement for certain services (in which counterclaim-defendant Hughes was identified as the principal of FMP), that agreement is terminated. Id. ¶ 51. Accordingly, counterclaim-defendants are no longer associated, affiliated, or connected with Build-A-Bear, other than the factual history of that agreement, and are not licensed, authorized, endorsed, or approved by Build-A-Bear in any way. Id.

Counterclaim-defendants' activities are likely to cause confusion among consumers and the public because purchasers, prospective purchasers, and others viewing counterclaim-defendants' website and marketing are likely, due to counterclaim-defendants' false statements and unauthorized use of the BUILD-A-BEAR Marks, BUILD-A-BEAR Entertainment Marks, and other Build-A-Bear intellectual property,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | | Date | June 24, 2026 |
|---|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | | |

mistakenly believe that Build-A-Bear is licensing, authorizing, endorsing, or approving counterclaim-defendants. Id. ¶ 52.

The likelihood of confusion, mistake, and deception engendered by Counterclaim-Defendants' infringement of the BUILD-A-BEAR Marks, BUILD-A-BEAR Entertainment Marks, and other Build-A-Bear intellectual property is causing irreparable harm to the goodwill symbolized by these marks and the reputation for quality that they each embody. Id. ¶ 53.

Counterclaim-defendants' activities are knowing, willful, intentional, and/or malicious. Id. ¶ 54.

## III.    LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | | Date | June 24, 2026 |
|---|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | | |

plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    DISCUSSION

The counterclaim-defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Build-A-Bear's counterclaims against Hughes and the second, fourth, fifth, sixth, seventh, eighth, and ninth claims against both FMP and Hughes. Mot. at 2.

### A.    Counterclaims Against Hughes

The counterclaim-defendants argue that every claim asserted against Hughes, which rests on an alter-ego theory of liability, fails as a matter of law because Build-A-Bear has pleaded no facts demonstrating that Hughes is the alter ego of FMP. Id. at 5-6.

In opposition, Build-A-Bear argues that "[t]he alter-ego allegations asserted throughout Build-A-Bear's Counterclaim easily satisfy the pleading standard applicable at the Rule 12(b)(6) stage, particularly because alter-ego facts are, by their very nature, peculiarly within FMP and Hughes's possession and control." Opp. at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

In reply, the counterclaim-defendants largely repeat their arguments. See Reply at 5-7.

In California, a corporation's liabilities may be imposed on an individual only when: (1) "'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased,'" and (2) "'an adherence to the fiction of the separate existence of the corporation would... sanction a fraud or promote injustice.'" Firstmark Capital Corp. v. Hempel Fin. Corp., 859 F.2d 92, 94 (9th Cir.1988) (citation omitted).

Here, Build-A-Bear alleges that "Patrick Hughes operates FMP without regard to the corporate form, including but not limited to by comingling funds and other assets, treating the assets of the business as his own, failing to keep proper records, disregarding legal formalities, using the corporate entity to procure labor, services, or merchandise for another person or entity, and inadequately capitalizing the business." Counter-compl. ¶ 4. Build-A-Bear further alleges that because "[a] unity of interest and ownership exists between FMP and Patrick Hughes such that separate personalities of FMP and Patrick Hughes do not exist," "an inequitable result would follow if the acts of FMP a[re] treated as those of FMP alone." Id.

The Court finds that Build-A-Bear adequately alleges that FMP's liabilities may be imposed on Patrick Hughes under a theory of alter ego. See Howse v. Chiquita Canyon, LLC, 757 F. Supp. 3d 1049, 1074 (C.D. Cal. 2024) ("At the motion to dismiss stage, district courts within the Ninth Circuit often apply a 'lenient standard' to allegations of alter ego liability, allowing claims to proceed on such a theory where the plaintiff has pleaded facts regarding only some of the factors relevant to the first element [of alter ego].") (citing cases).

**B.     Breach of Fiduciary Duty**

The counterclaim-defendants argue that Build-A-Bear's breach of fiduciary duty counterclaim fails because it does not allege a fiduciary relationship recognized under California law. They argue that the countercomplaint "alleges only that FMP and [Build-A-Bear] entered into an arm's-length services agreement under which FMP would represent and advise [Build-A-Bear] in defined industries." Mot. at 6. They argue that the Agreement's provision that required FMP to "always put the needs of [Build-A-Bear]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | | Date | June 24, 2026 |
|----------|------------------------|---|------|---------------|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | | |

over its own" does not, by itself, create a fiduciary relationship and is barred by California's independent-duty rule.  Id.

In opposition, Build-A-Bear argues that a provision of the Agreement, which requires FMP to "always put the needs of Build-A-Bear over FMP's own needs," adequately alleges a fiduciary relationship between FMP and Build-A-Bear.  Counter-compl. ¶ 21, Opp. at 12-13.  Moreover, Build-A-Bear argues that "the nature of the relationship" between FMP and Build-A-Bear imposed fiduciary duty obligations upon FMP in favor of Build-A-Bear.  See Opp. at 12-13; Counter-compl. ¶ 61.  Build-A-Bear argues that "the Agreement between FMP/Hughes and Build-A-Bear is not a standard arm's-length commercial contract, but rather an agreement under which FMP and Hughes undertook to act as Build-A-Bear's representative and advisor, to the exclusion of any competitor of Build-A-Bear. The precise and peculiar nature of this relationship … is precisely the kind of relationship that California courts have recognized as capable of giving rise to fiduciary duties beyond the contractual baseline."  Id. at 14.

In reply, the counterclaim-defendants argue that Build-A-Bear's breach of fiduciary claim fails because under California law, "[c]ontractual provisions reflecting a mutually beneficial commercial arrangement between sophisticated parties do not show the required subordination of the defendant's interests."  Reply at 7 (citing City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386-89 (2008)).  They argue that "[t]he Agreement contains no trustee or fiduciary designation, and the Counterclaim does not allege that it does."  Id. at 7-8.

A party cannot recover in tort for what is essentially a breach of contract, unless the breaching party "violates a duty independent of the contract arising from principles of tort law."  Erlich v. Menezes, 21 Cal. 4th 543, 551 (1999).  Thus, under California law, "[a] plaintiff cannot make out a claim for breach of fiduciary duty based solely on an alleged breach of contract, absent an allegation that the parties had a fiduciary relationship."  Swinden v. Vanguard Grp., Inc., No. C 09-03816 SI, 2009 WL 3415376, at *5 (N.D. Cal. Oct. 21, 2009) (citing cases).  However, "parties may create fiduciary relationships by contract."  Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007) (citations omitted).

A fiduciary relationship is "any relationship between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party."  Wolf v. Sup. Ct., 107 Cal. App. 4th 25, 29 (2003).  For a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

fiduciary duty to exist, a person "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008). While fiduciary duties are ordinarily "not impose[d] ... on commercial parties in arms' length relationships," such duties may be imposed "in special situations, such as when unusual circumstances give rise to an unusual level of trust or vulnerability." Kabushiki Kaisha Megahouse v. Anjar Co. LLC, No. 14-CV-598-CAS(CWx), 2014 WL 5456523, at *10 (C.D. Cal. Oct. 20, 2014). "A fiduciary duty can exist even in the absence of a relationship defined by law as long as a plaintiff can show an agreement between the fiduciary and the principal where the fiduciary accepts fiduciary responsibilities. The existence of such a relationship founded upon agreement is typically a question of fact." Storz Mgmt. Co. v. Carey, No. 2:18-CV-00068-DJC-DB, 2024 WL 3396128, at *5 (E.D. Cal. July 12, 2024) (citations omitted).

Here, Build-A-Bear adequately alleges that FMP owed Build-A-Bear a fiduciary duty. Build-A-Bear's countercomplaint alleges that "[p]ursuant to the Agreement, FMP undertook fiduciary duty obligations in favor of Build-A-Bear," and that "the nature of the relationship defined by the Agreement imposed fiduciary duty obligations upon FMP in favor of Build-A-Bear." Counter-compl. ¶ 61. Build-A-Bear alleges that, pursuant to that relationship, "[it] placed its trust in FMP to act solely in Build-A-Bear's best interests[] and put Build- A-Bear's needs over FMP's needs, including by sharing sensitive, confidential information with FMP." Id. These allegations, including the alleged Agreement's provision in which FMP agreed to "always put the needs of Build-A-Bear over FMP's own needs," id. ¶ 21, adequately state that FMP knowingly undertook to act on behalf and for the benefit of Build-A-Bear, *and* that FMP entered into a relationship with Build-A-Bear which imposed that undertaking as a matter of law. City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008); Comm. On Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983) ("A fiduciary … must undertake to act on behalf of the beneficiary, *giving priority to the best interest of the beneficiary.*") (emphasis added). In other words, Build-A-Bear adequately alleges the existence of a fiduciary relationship that is both imposed on FMP by law and undertaken by FMP by agreement. See GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Services, Inc., 83 Cal. App. 4th 409, 416 (2000) ("There are *two kinds* of fiduciary duties—those imposed by law and those undertaken by agreement.") (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

Moreover, Build-A-Bear alleges that "FMP breached its fiduciary duty obligations owed to Build-A-Bear through a variety of actions, as detailed [in the countercomplaint], which ultimately resulted in FMP not putting Build-A-Bear's interests over its own." Counter-compl. ¶ 62.

Accordingly, the Court denies FMP and Hughes' motion to dismiss the breach of fiduciary duty counterclaim.

### C.    Lanham Act Claims and State Trademark Infringement Claims

The counterclaim-defendants argue that Build-A-Bear's fourth claim (federal trademark infringement), fifth claim (federal false designation of origin), sixth claim (federal trademark dilution), eighth claim (common law trademark infringement), and ninth claim (state trademark dilution) fail because they all rest on the "flawed premise" "that [c]ounterclaim-[d]efendants' references to Build-A-Bear on FMP's website constitute actionable 'use' of the BUILD-A-BEAR Marks." Mot. at 8. Counterclaim-defendants argue that FMP's references to Build-A-Bear on its website instead constitute … "nominative and descriptive reference[s] to a prior commercial relationship and to FMP's own production credits" which are protected under Ninth Circuit law. Id. They argue that such references are protected because "Build-A-Bear's productions and the parties' prior relationship cannot be described without naming Build-A-Bear," and "FMP is alleged to have used the marks only to identify those productions and that relationship." Id. at 9. Moreover, they argue that "a truthful description of concluded work does not suggest any current sponsorship or endorsement," and that "[t]he [c]ounterclaim does not allege that FMP used the BUILD-A-BEAR Marks to designate the source of its own services. It alleges only that FMP used the marks to describe Build-A-Bear and the productions on which FMP worked." Id.

The counterclaim-defendants further argue that Build-A-Bear's seventh claim (unfair and deceptive trade practices) and ninth claim (state trademark dilution) fail because they constitute undifferentiated multi-state pleading. Id. at 10. FMP and Hughes argue that Build-A-Bear's seventh claim "asserts claims under the unfair and deceptive trade practices statutes of more than a dozen states but fails to identify which state's law governs any particular conduct or to plead the elements required under any of those statutes" in violation of Fed. R. Civ. P. 8. Id. FMP and Hughes state, without citation to caselaw, that "[t]he deficiency is particularly acute because many of these statutes sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading standard." FMP and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

Hughes argue that Build-A-Bear's ninth claim fails because it "invokes the trademark dilution statutes of dozens of states without (1) identifying which state's dilution law applies to any alleged conduct, (2) pleading the elements required under any of those statutes, or (3) alleging which BUILD-A-BEAR Marks are claimed to be famous in which states." Id. at 11.

In opposition, Build-A-Bear argues that FMP and Hughes' "repeated and unauthorized uses of Build-A-Bear's trademarks are [alleged to be] neither truthful nor nominative." Opp. at 16. Build-A-Bear argues that the countercomplaint "expressly state[s] Counterclaim-Defendants' statements relating to Build-A-Bear are false and misleading," and that such statements are likely to cause confusion among customers and the public. Id. at 16-18. Accordingly, Build-A-Bear argues that "[FMP and Hughes'] arguments about the application of the nominative fair use defense are … meritless." Id. at 19-21.

As to their seventh and ninth claims, Build-A-Bear argues that "Build-A-Bear has satisfied Rule 8's requirement of giving fair notice of the claims asserted because the multiple state law claims included in each [claim] are sufficiently similar and are based on the same underlying misconduct, which has been incorporated by reference into the claims." Id. at 22-23.

In reply, the counterclaim-defendants argue that the availability of the nominative fair use defense may be resolved on a motion to dismiss. Reply at 2 (citing Applied Underwriters, Inc. v. Lichtenegger, 913 F.3d 884, 897 (9th Cir. 2019)). FMP and Hughes argue that "[a]s in Applied Underwriters, the pleaded materials themselves show use of [Build-A-Bear's] marks to refer to [Build-A-Bear] and its productions in describing a past engagement, and conclusory confusion allegations cannot convert that referential use into trademark infringement or dilution." Id. at 3. Moreover, FMP and Hughes repeat that Build-A-Bear's seventh and ninth claims fail because they "constitute classic shotgun pleading." Id. at 9-10.

"[N]ominative fair use is a defense to a trademark claim [that] protects a defendant where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." Adobe Sys. Inc. v. Christenson, 809 F.3d 1071, 1081 (9th Cir. 2015). In other words, "the Sleekcraft analysis doesn't apply where a defendant uses the mark to refer to the trademarked good itself." Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1175 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|----------|------------------------|------|---------------|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

"This principle recognizes the proposition that [t]rademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." Adobe Sys., 809 F.3d at 1081 (emphasis added).

The Ninth Circuit has explained that, "where the defendant uses a trademark to describe the plaintiff's product, rather than its own … a commercial user is entitled to a nominative fair use defense provided he meets the following three requirements":

> First, the product or services in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

New Kids on the Block v. News Am. Pub., Inc., 971 F.2d 302, 308 (9th Cir. 1992).

Here, FMP and Hughes argue that Build-A-Bear's infringement claims are barred under the nominative fair use defense because the countercomplaint alleges that FMP used Build-A-Bear's trademark only in the course of describing Build-A-Bear's prior commercial relationship with FMP; moreover, FMP and Hughes argue that their use of such trademarks do not suggest any current sponsorship or endorsement.  FMP and Hughes' argument fails.  Build-A-Bear's countercomplaint alleges that:

> Counterclaim-Defendants' statements [on FMP's website] about their contributions to Build-A-Bear are demonstrably false and misleading … wherein, among other things, Counterclaim-Defendants did not significantly contribute to, let alone drive and execute on, Build-A-Bear's expansion into Walmart, Build-A-Bear's licensing deal for Harry Potter, or Build-A-Bear's partnership with Varsity Spirit, nor did Counterclaim-Defendants drive and execute "hit ventures across movies, TV series, and books" for Build-A-Bear.

Counter-compl. ¶ 42.

Moreover, the countercomplaint alleges that "[c]ounterclaim-[d]efendants are using misleading language in an effort to create the false impressions that [c]ounterclaim-[d]efendants are responsible for and secured the rights for, among other things, Build-A-Bear's expansion into Walmart, Build-A-Bear's licensing deal for Harry Potter, or Build-A-Bear's partnership with Varsity Spirit." Id. ¶ 49.  The countercomplaint further alleges

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

that the "[c]ounterclaim-[d]efendants are making these false statements and misusing the BUILD-A-BEAR Marks … in order to take improper advantage of and benefit from Build-A-Bear's famous brand and goodwill associated with the BUILD-A-BEAR Marks …," and that "[c]ounterclaim-[d]efendants' activities are likely to cause confusion among consumers and the public … [and cause the public to] mistakenly believe that Build-A-Bear is licensing, authorizing, endorsing, or approving Counterclaim-Defendants." Id. ¶ 50. These allegations assert conduct by the counterclaim-defendants that falls outside the protection of the nominative fair use defense. New Kids on the Block v. News Am. Pub., Inc., 971 F.2d 302, 308 (9th Cir. 1992) (holding that to fall within nominative fair use protection, "the user must do nothing that would in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder"). While courts may dismiss claims at the pleading stage pursuant to the nominative fair use defense, see Applied Underwriters, Inc. v. Lichtenegger, 913 F.3d 884, 897 (9th Cir. 2019), such situations are "rare." Williams v. Gerber Prods. Co., 552 F.3d 934, 939 (9th Cir. 2008). Here, Build-A-Bear adequately alleges that the counterclaim-defendants engaged in conduct that is not protected by the nominative fair use defense because such conduct is likely to deceive a reasonable consumer. Accordingly, Build-A-Bear's fourth, fifth, sixth claim, eighth, and ninth claims do not fail because of the nominative fair use doctrine.

As to FMP and Hughes' argument that seventh and ninth counterclaims fail because they rely on shotgun pleading in violation of Rule 8, the Court finds this argument unpersuasive. "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." Hill v. Bd. of Directors, Officers & Agents & Individuals of the Peoples Coll. of L., No. 2:23-CV-01298-JLS-PD, 2023 WL 9420819, at *3 (C.D. Cal. June 7, 2023). The allegations in Build-A-Bear's countercomplaint do not constitute shotgun pleadings. The seventh counterclaim alleges that the counterclaim-defendants' conduct violates "the unfair and deceptive trade practices statutes of … California [among statutes of other states]," specifically Cal. Bus. & Prof. Code § 17200. See Counter-compl. ¶ 96. The Court finds that this allegation, considered alongside other allegations in the countercomplaint that are incorporated by reference, adequately provides notice to FMP and Hughes that the seventh claim is asserted pursuant to Cal. Bus. & Prof. Code § 17200 and other states' statutes. To adequately state a claim for violation of Cal. Bus. & Prof. Code § 17200 and other states' statutes, Build-A-Bear is not required to plead the elements required under those statutes. Los Angeles Press Club v. Noem, 820 F. Supp. 3d 1034, 1043 (C.D. Cal. 2026)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:25-cv-10382-CAS-MARx | Date | June 24, 2026 |
|---|---|---|---|
| Title | Foundation Media Partners, LLC v. Build-A-Bear Workshop, Inc. | | |

("[U]nder federal notice pleading, a complaint need not plead every element of a claim in so many words, but only facts that are sufficient to establish an entitlement to relief.") (citing Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008)).  Nor have FMP and Hughes explained why Build-A-Bear's seventh claim is subject to Rule 9(b)'s heightened pleading standard and, if so, why the allegations in the countercomplaint fail to satisfy such standard.

Similarly, the ninth counterclaim asserts that counterclaim-defendants "are causing and will continue to cause irreparable injury to Build-A-Bear's goodwill and business reputation and dilution of the distinctiveness and value of Build-A-Bear's famous and distinctive marks in violation of California law, and the anti-dilution laws of several other states." See Counter-compl. ¶ 106.  The claim cites Cal. Bus. & Prof. Code § 14247, among other state statutes. Id.  For similar reasons, the Court finds that the ninth claim, which incorporates by reference other allegations in the countercomplaint, adequately states a claim under Cal. Bus. & Prof. Code § 14247 and other states' laws.

The Court finds it appropriate to defer ruling on any choice of law issues because the parties have not briefed these issues or engaged in any "analysis regarding the differences between California and [other states'] law[s] or the governmental interests of the … states." Hana Fin., Inc. v. Geoffrey Allen Corp., No. CV150368MWFJEMX, 2016 WL 11744960, at *6 (C.D. Cal. Feb. 23, 2016); see also Tabletop Media, LLC v. Citizen Sys. of Am. Corp., No. CV 16-7140 PSG (ASX), 2017 WL 10591885, at *3 (C.D. Cal. Mar. 3, 2017) ("[C]ourts routinely defer deciding choice-of-law questions until the parties have had an opportunity to develop the factual record.") (citation omitted).

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** FMP and Hughes' motion to dismiss Build-A-Bear's counter-complaint.

FMP and Hughes shall file an answer to Build-A-Bear's counter-complaint within fourteen (14) days of the date of this order.

The Court **VACATES** the hearing scheduled for June 29, 2026.

IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|---|---|---|---|---|
| Initials of Preparer | | | CMJ | |